**Rachel J. MEYER, Appellant,**

v.

**MISSOURI STATE HIGHWAY COMMIS-SION, State of Missouri, and Paseo Bridge Commission, Appellees.**

No. 76–2040.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1977.

Decided Dec. 14, 1977.

Sandra C. Midkiff, Kansas City, Mo., on brief for appellant.

John H. Gladden, Missouri State Highway Commission, Joplin, Mo., for appellees; Bruce A. Ring, Jefferson City, Mo., and Curtis F. Thompson, of State Highway Commission of Missouri, Jefferson City, Mo., on brief.

Before MATTHES, Senior Circuit Judge, BRIGHT, Circuit Judge, and MILLER, Judge.*

BRIGHT, Circuit Judge.

Rachel Meyer, a former employee of the Missouri State Highway Commission (the Commission), brought this action against her former employer under § 703(a) of Title VII,[1] the Civil Rights Act of 1964, alleging that the Commission discriminated against her because of her sex in failing to promote her and in failing to consider her for relocation to another job when her job was terminated. The district court denied her any relief, and she brought this appeal. We affirm the district court in part, reverse in part, and remand the case for relief consistent with this opinion.

I.

Appellant Meyer (now Dominguez) worked full-time as a toll collector for appellee on the Paseo Bridge in Kansas City, Missouri, from May 1, 1970, to September 30, 1972, when the bridge became a free bridge.

Alfred Schumacher managed the Paseo Bridge during this period, and supervised appellant's work. Schumacher's duties included hiring and firing, recommending pay increases for the employees of the bridge, and promoting individuals to the position of shift captain. The job of shift captain was "unclassified" by the Commission and lacked any written description of duties or minimum qualifications for the job. The district court found that serving as shift captain entailed primary duties of (1) taking care of problems involving the paying public, (2) handling personal matters between toll collectors, and (3) supervising the automatic toll collecting machines. The trial court indicated that proper performance of these duties requires the ability to react well in crises and the ability to command respect from fellow employees.

Mr. Schumacher employed informal procedures in making promotions to shift captain. Because the job was unclassified, he was not required to post notices of job openings for shift captain and he did not do so. Thus, no formal application process existed. Instead, Schumacher summoned the chosen individual to his office and asked whether he wanted the promotion. The Personnel and Accounting Offices of the Commission then made a pro forma review of the appointment.

During appellant's tenure at the bridge, one toll collector with greater seniority, Martin Cady, received a promotion to shift captain. At the time of his promotion, the Commission employed only males in the four shift captain positions available.

In anticipation of the close of the Paseo Bridge toll gates, the Commission issued a resolution stating "every effort" should be made to relocate the eighteen full-time employees of the Paseo Bridge to other jobs with the Commission. Frank Taggart, a personnel liaison officer for the Commission, undertook responsibility to coordinate these efforts. He assembled employment applications, data sheets, and performance appraisals, and mailed them out to each of the ten regional highway districts in Missouri under a cover letter directing that the various districts give employment preference, all other things being equal, to Paseo Bridge employees.[2] Mr. Taggart and manager Schumacher of the Paseo Bridge then coordinated interviews between eligible bridge employees and various district offices.

Appellant applied for relocation, listing on her application that she would take any job for which she was qualified, but expressing preferences for the Kansas City area and daytime hours. She listed no

---

* The Honorable Jack R. Miller, Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

1. 42 U.S.C. § 2000e–2 (Supp. V 1975).

2. The Commission, however, could not enforce this preference under existing highway department employment practices. Each district hired autonomously, and its appointments were rubber-stamped by the Commission's central office.

skills except for typing, and no prior experience except waitressing. She also mentioned to Mr. Taggart on several occasions that she could do "anything a man could do," and that she did not want her application limited to office or clerical work.

Sixteen of the eighteen eligible employees applied for relocation. Of this total, twelve were granted at least one interview, and ten received job offers. Four employees, including appellant, the only woman in the group, received no interviews.

Ms. Meyer then filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within the time limits prescribed by § 706 of Title VII, 42 U.S.C. § 2000e-5 (Supp. V 1975). The EEOC referred her charge to the Missouri Commission on Human Rights, which granted a waiver of jurisdiction to her on September 27, 1972. The EEOC mailed her a Notice of Right to Sue on August 27, 1973, and within ninety days, on November 26, 1973, she filed this action against appellee for injunctive relief and damages, including backpay and reinstatement.

In her suit and on this appeal, appellant claims that she suffered discrimination on the basis of sex in two ways: first, because she was not considered for promotion to shift captain during her tenure on the bridge; second, because she was not relocated to another job within the state highway department after the closing of the Paseo Bridge.

The district judge denied Ms. Meyer any recovery, finding on each claim that she had failed to establish a prima facie case of discrimination. She brought this appeal, contending that the district court findings were clearly erroneous.

## II.

Recent decisions of the Supreme Court have greatly clarified the legal tests employed in determining whether or not a hiring practice is discriminatory under the applicable provisions of Title VII.[3] The Court has recognized two separate theories under which plaintiffs may be entitled to relief under Title VII: (1) disparate treatment, and (2) disparate impact.[4] *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

In this action, Ms. Meyer proceeded on a disparate treatment theory. In order to prevail under this theory, she must prove: (1) differences in treatment, and (2)

3. Section 703 of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2 (Supp. V 1975), provides, in pertinent part, that:
   (a) It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

4. In *International Brotherhood of Teamsters v. United States*, 97 S.Ct. 1843, 1854–55 n. 15 (1977), the Court declared:
   "Disparate treatment" such as alleged in the present case is the most easily under-

stood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.
   Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive, we have held, is not required under a disparate impact theory. Either theory may, of course, be applied to a particular set of facts. [Citations omitted.]

a discriminatory motive on the part of her employer. *International Brotherhood of Teamsters v. United States, supra,* 97 S.Ct. at 1854 & n. 15; *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 805 & n. 18, 93 S.Ct. 1817.

■ To meet this burden, Ms. Meyer must in the first instance establish a prima facie case of discrimination. *International Brotherhood of Teamsters v. United States, supra,* 97 S.Ct. at 1854; *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1817. What constitutes a prima facie case of discrimination necessarily varies according to the facts of the case. *International Brotherhood of Teamsters v. United States, supra,* 97 S.Ct. at 1866; *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1817. In this case, both parties propose analysis under the four-part test of *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1817. *See also International Brotherhood of Teamsters v. United States, supra,* 97 S.Ct. at 1866; *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 772–73, 96 S.Ct. 1251, 1267–68, 47 L.Ed.2d 444 (1976); *United States v. N. L. Industries, Inc.,* 479 F.2d 354 (8th Cir. 1973). To make out a prima facie case of discrimination under this test, the plaintiff must demonstrate that:

1) She is a member of a protected class;

2) She applied for and qualified for a job for which the employer was seeking applicants;

3) Despite her qualifications she was rejected;

4) After her rejection, the position remained open and the employer continued to seek applications from persons with plaintiff's qualifications.

■ This showing of differences in treatment often implies discriminatory intent. *International Brotherhood of Teamsters v. United States, supra,* 97 S.Ct. at 1854 n. 15; *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). As Mr. Justice Stevens has noted, "[f]requently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor." [5]

■ Once plaintiff has successfully proven a prima facie case of discrimination, the burden of proof shifts to the defendant-employer to rebut this showing by demonstrating either that the plaintiff was not treated differently than other job applicants, or that any difference in treatment was not based on discriminatory motives.

■ In this case appellant makes two claims that must be analytically distinguished: (1) that she was discriminated against because she was not given a chance to relocate to another job when the Paseo Bridge closed, and (2) that she was discriminated against because she was not promoted to the position of shift captain. As indicated above, the parties have proposed that the four-part test outlined in *McDonnell Douglas Corp. v. Green* be used to determine whether plaintiff has set out a prima facie case of sex discrimination. They contend, and we agree, that promotion and job relocation are sufficiently analogous to the initial hiring decision to warrant the use of this test.

■ We review each of plaintiff's claims separately below. In doing so, we are cognizant of the fact that we cannot overturn a district court's factual findings unless we

---

**5.** *Washington v. Davis,* 426 U.S. 229, 253, 96 S.Ct. 2040, 2054, 48 L.Ed.2d 597 (1976) (Stevens, J., concurring). Mr. Justice Stevens continued:

For normally the actor is presumed to have intended the natural consequences of his deeds. This is particularly true in the case of governmental action which is frequently the product of compromise, of collective deci-

sionmaking, and of mixed motivation. It is unrealistic, on the one hand, to require the victim of alleged discrimination to uncover the actual subjective intent of the decisionmaker or, conversely, to invalidate otherwise legitimate action simply because an improper motive affected the deliberation of a participant in the decisional process.

find them clearly erroneous, Fed.R.Civ.P. 52(a), and we cannot make our own independent factual findings upon a record barren of facts. *Hazelwood School Dist. v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

### III.

■ We first address appellant's claim of discrimination in promotion to shift captain. The district court concluded that appellant failed to make out a prima facie case of sex discrimination with respect to this claim. Although appellant vigorously contends that she was qualified for the position of shift captain, the district court found otherwise. To be sure, she performed her job satisfactorily or better, which indicates some basis for consideration for promotion to shift captain. The district court in its opinion notes, however, that appellant lacked respect from her co-workers and did not respond adequately in emergencies. This finding supports the district court's determination that appellant lacked the qualifications necessary to perform satisfactorily as a shift captain. Accordingly, here appellant failed to establish the second element of the *McDonnell* test for a prima facie case—job qualification. Therefore, we affirm the district court's ruling on this issue as not clearly erroneous.

### IV.

■ We now turn to appellant's second claim, that she suffered discrimination in job relocation opportunities. Ms. Meyer contends that she applied and was qualified for several jobs for which male Paseo Bridge employees had received consideration, but that she did not receive consideration for any of them: 1) maintenanceman, 2) serviceman, 3) custodian, 4) hotel manager.[6] We need consider only the first job for which appellant claimed she was quali-

fied. Our review of the record demonstrates that appellant successfully has made out a prima facie case of sex discrimination because she was not considered for the job of maintenanceman, that the Commission failed to rebut her showing and that the district court's finding to the contrary is clearly erroneous.

Of the four elements necessary to satisfy the *McDonnell Douglas* test, the parties contested only one, qualifications, in regard to the position of maintenanceman. The district court concluded that Ms. Meyer did not possess two qualifications for the job, the ability to operate light equipment such as pickups and mowers, and willingness to be on a 24-hour call. The district court stated:

> In view of the fact that plaintiff had no prior experience with handling equipment, as well as the fact that her application stated a preference for working daytime hours only, this Court cannot conclude that she was refused employment for positions which require operation of equipment and 24-hour call or night service solely on the basis of her sex. [Slip op. at 11.]

Although appellant's relocation application and her supplemental data sheet did not mention any ability to operate lightweight mechanical equipment, we must observe that the data sheets called for general information. Ms. Meyer did state on her application that she possessed a driver's license and could obtain a chauffeur's license if necessary.

She stated as a conclusion on her form that "I would like to remain with the highway department. I would consider any type of work within my abilities. Prefer day hours * * * Please." Five other former Paseo Bridge employees, all males, received interviews for the job of maintenanceman despite the fact that they did not

6. The fourth job, hotel manager, is not a position with the Commission. Ms. Meyer contended that she was discriminated against because all male employees who had not yet found new jobs and were still seeking work received a letter from the Commission about a hotel manager job available with a private em-

ployer in Kansas City, but she did not. In effect, Ms. Meyer contends that the Commission should be liable under Title VII for discrimination in hiring, not for failing to hire her, but for failure to refer her to another employer. Because of our holding in this case, we do not reach this unusual claim.

indicate an ability to operate light equipment on their personnel data sheet. Indeed, some did not even mention on their application or data sheet that they could drive.

The district court found that appellant lacked the second qualification for maintenanceman—a willingness to be on 24-hour call—noting that on her application for relocation she stated a preference for daytime work. However, Ms. Meyer stated only a *preference* for day hours and repeatedly told the Commission that she would like to be considered for the job of maintenanceman. Other Paseo Bridge employees stated *geographical preferences*, but were granted job interviews in districts outside of their preferences.

Although no Missouri state highway official with hiring authority testified for appellee, the trial court in rejecting Ms. Meyer's argument that she had presented a prima facie case of employment discrimination reasoned as follows:

> It is true, indeed, that others were hired for positions with the Highway Commission and that plaintiff was not, but aside from the testimony that all Paseo Bridge employees' applications were treated in the same manner, no witness before this Court had knowledge of what specific consideration plaintiff received or whether those with hiring authority looked at her application objectively. In view of the fact that plaintiff had no prior experience with handling equipment, as well as the fact that her application stated a preference for working daytime hours only, this Court cannot conclude that she was refused employment for positions which require operation of equipment and 24-hour call or night service solely on the basis of her sex. In short, while we do not know that the hirers of 159 men in the Highway Commission looked at plaintiff's application objectively, without sexual bias, we cannot conclude from the evidence presented herein that they *failed* to look at plaintiff's application objectively. On the basis of this evidence, the most rea-

sonable conclusion is that plaintiff, like the male employees who were not interviewed or relocated, was not interviewed for job openings because of the restrictions on her application form. [Slip op. at 11–12 (footnote omitted).]

█ We reject this reasoning. It is not based on an appropriate construction of the requirements for setting out a prima case. The court imposed on Ms. Meyer the burden to show that the Commission *failed* to look at her application objectively. This is a far greater burden of proof than required, for it entails proof of the subjective states of mind of each of the individuals with hiring authority in the Commission who failed to hire the plaintiff.

As we have already stated, the proper burden of proof includes a prima facie showing of differences in treatment and discriminatory intent. Ms. Meyer presented ample evidence establishing that she was qualified to serve as a maintenance worker.

Additionally, the statistical evidence shows that of the 2,000 employees of the Commission serving in the maintenance division at the time in question, none were females. During the relocation period, 159 men and no women were hired as new maintenancemen, and 10 of the 15 Paseo Bridge employees received interviews for the position, some with less evident qualifications than Ms. Meyer. This evidence not only indicates differences in treatment, it also raises a strong inference of discriminatory intent. For that reason, we hold as a matter of law that plaintiff has proven a prima facie case of sex discrimination with respect to hiring for the position of maintenanceman.

Against the statistical evidence indicative of purposive sex discrimination in hiring practices plus specific evidence of disparate treatment of Ms. Meyer's application as compared to male employees similarly situated, the Commission offered rebuttal evidence only on the issue of Ms. Meyer's lack of qualifications. Her case has pierced that shield, and the Commission has failed to rebut her prima facie showing of discrimination.

In sum, the record establishes that Ms. Meyer has made out an unrebutted prima facie case of sex discrimination in her claim that she was not considered for the job of maintenanceman, under relocation procedures of the Missouri Highway Department, notwithstanding that she was qualified for such position. The trial court applied an improper test in determining that Ms. Meyer failed to establish a prima facie case. But utilizing a proper evidentiary test, we conclude that the findings adverse to Ms. Meyer in this regard must be set aside as clearly erroneous.

■■■ Accordingly, we reverse and remand this case to the district court with directions to grant appellant back pay, attorneys' fees, and costs in the district court action, and other appropriate relief in conformity with 42 U.S.C. § 2000e–5(g) (Supp. V 1975). We shall allow appellant costs as well as reasonable attorneys' fees on this appeal upon the filing of an appropriate affidavit supporting and detailing time spent upon this appeal. *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876 (8th Cir. 1977); *Firefighters Institute for Racial Equality v. St. Louis,* 549 F.2d 506 (8th Cir. 1977).

MATTHES, Senior Circuit Judge, concurring in part and dissenting in part.

I agree with the majority opinion insofar as it affirms the district court's finding that plaintiff was not discriminated against with respect to shift captain promotion. I must respectfully dissent, however, from that portion of the opinion which holds that plaintiff established a prima facie case of sex discrimination regarding defendant's failure to employ her as a maintenanceman.

The dispositive issue in this litigation is whether or not plaintiff was qualified for the job of maintenanceman. Unless qualified for the position denied her, plaintiff cannot establish a prima facie case of sex discrimination under Title VII. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); *Mosby v. Webster College,* 563 F.2d 901 (8th Cir. 1977). The district court found that plaintiff lacked the necessary qualifications. Her case must therefore fail unless she can demonstrate that that finding was clearly erroneous.

A district court's findings of fact will be disturbed as clearly erroneous only if "[s]uch evidentiary weight and convictional certainty [is] present that the appellate court does not feel able to escape the view that the trial court has failed to make a sound survey of or to accord the proper effect to all of the cogent facts . . . ." *Nee v. Linwood Securities Co.,* 174 F.2d 434, 437 (8th Cir. 1949). The burden of proving clear error is particularly heavy where, as here, the district court is experienced, capable, and even-handed. 5A Moore's Federal Practice ¶ 52.03, at 2627 (2d ed. 1977); *see Noland v. Buffalo Ins. Co.,* 181 F.2d 735, 739 (8th Cir. 1950).

The district court found that plaintiff was unqualified to be a maintenanceman because she lacked apparent experience with light equipment and because she had a stated preference for daytime work. Plaintiff also had a geographical preference. The majority opinion correctly points out that several male Paseo Bridge employees were interviewed for the job of maintenanceman despite either a geographical preference or a lack of apparent experience with light equipment. But only plaintiff indicated a preference for daytime hours. That preference directly conflicted with the requirement that a maintenanceman be on call twenty-four hours a day. On that basis alone, the district court could properly find that plaintiff lacked the qualifications necessary for the position she sought.

It is not enough that we might have found the facts differently for "[i]t is not the function of the court of appeals to reevaluate evidence presented in the trial court, and the reviewing court cannot substitute its judgment for first hand evaluation." *St. Louis Typographical Society Union No. 8 v. Herald Co.,* 402 F.2d 553, 557 (8th Cir. 1968). As Judge John B. Sanborn, a distinguished jurist, put the matter:

This Court, upon review will not retry issues of fact . . . . The power of a trial court to decide doubtful issues of

fact is not limited to deciding them correctly. . . . In a nonjury case, this court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. (citations omitted). *Cleo Syrup Corp. v. Coca Cola Co.,* 139 F.2d 416, 417–18 (8th Cir. 1943), *cert. denied,* 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074 (1944); *see also Kendrick v. Com'n. of Zoological Subdistrict,* 565 F.2d 524 (8th Cir. 1977) (Title VII case).

Plaintiff simply has not met her burden of demonstrating that the district court's finding that she was not qualified to be a maintenanceman was clearly erroneous. Consequently, I am compelled to hold that plaintiff failed to establish a prima facie case of sex discrimination.

I must also disagree with the majority's position that the district court required plaintiff to adduce a greater quantum of proof than that required in a Title VII case. In my view, the language of the district court's opinion to which the majority objects, at 810, is taken completely out of context. Even so, the district court's formation does not indicate the imposition of an undue burden of proof on the plaintiff. That section does not differ materially from those other portions of the district court's opinion which discuss the plaintiff's burden. What differences exist are purely semantical. When read as a whole, the district court's opinion clearly demonstrates a proper regard by an able trial judge for the plaintiff's burden of proof.

Neither am I persuaded that the majority's assessment and evaluation of the statistical evidence is correct. Although such evidence, under proper circumstances, is entitled to appropriate consideration, it did not in this case, as the majority holds, at 810, establish a prima facie case of discrimination as a matter of law. The statistical evidence shows that no females were employed by defendant as maintenancemen, but there was no evidence concerning the number of females who sought the position.

Without such a comparative measure, the statistical evidence cited by the majority is, at best, inconclusive. *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 231 n. 46 (5th Cir. 1974); *see Green v. Missouri Pacific Railroad Co.,* 523 F.2d 1290, 1295 (8th Cir. 1975). If the record revealed that other women besides plaintiff were denied employment as maintenancemen, then a proper statistical inference of disparate treatment might be drawn.

Finally, and in summary, the majority opinion, viewed in the light of the entire record, is internally inconsistent. The evidence relating to plaintiff's claim that she was not promoted to toll captain solely because of her sex is just as cogent and probative, if not more so, than the evidence in support of her contention that her sex was the sole motivation for denying her a job as a maintenanceman. As I read the record, plaintiff was familiar with all segments of the toll collecting operation on Paseo Bridge, including the duties of toll captain, yet Alfred Schumacher, who supervised and managed the Paseo Bridge, did not promote plaintiff to the position of toll captain. However, the district court found, in effect, and properly so, that plaintiff's gender was not a factor in Schumacher's decision.

It seems only logical to conclude that the job of maintenanceman involves duties which are far more arduous than those which a toll captain is required to perform. The record bears out this conclusion. Frank Taggart, Personnel Liaison Officer for the Highway Commission, testified that a maintenanceman was subject to be on call twenty-four hours a day. He carefully considered plaintiff's transfer application, and it is clear that, after a close appraisal of plaintiff's qualifications and her stated preference for day hours only, he concluded that she was not qualified for the position of maintenanceman. It was on that basis, and that basis alone, that she was not employed. In particular, he stated that he did not give plaintiff's application, her performance record, and her data sheet any differ-

ent treatment than that accorded the male applicants who were seeking relocation.[1]

On the basis of all of the evidence, the district court made the following finding:

> With full awareness of the difficulty of proving sex discrimination even though it may in fact exist, the Court has very carefully examined all of plaintiff's contentions and the evidence with sensitivity for any such possible bias. Having given full consideration to plaintiff's arguments and plaintiff's evidence, however, the Court found her claims of discrimination on the basis of sex and promotions and relocation unsupported by the record. Plaintiff has failed to present a prima facie case of discrimination, and the burden of proof accordingly has not shifted to defendant to set forth a nondiscriminatory reason why plaintiff was neither promoted nor relocated upon closing of the bridge. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court does note in addition, however, that defendant has set forth competent evidence to explain the circumstances of plaintiff's employment situation.

Considering the entire record, I am not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Accordingly, I would affirm the judgment.

## ADDENDUM TO DISSENT

The concluding paragraph of Judge Bright's original opinion read as follows:

> Accordingly, we reverse and remand this case to the district court with directions to grant appellant appropriate relief in conformity with 42 U.S.C. § 2000e-5(g) (Supp. V 1975). We shall allow appellant costs as well as reasona-

ble attorneys' fees on this appeal upon the filing of an appropriate affidavit supporting and detailing time spent upon this appeal. (citations omitted.)

Judge Bright has now revised the foregoing paragraph to read:

> Accordingly, we reverse and remand this case to the district court with directions to grant appellant back pay, attorneys' fees, and costs in the district court action, and other appropriate relief in conformity with 42 U.S.C. § 2000e-5(g) (Supp. V 1975). We shall allow appellant costs as well as reasonable attorneys' fees on this appeal upon the filing of an appropriate affidavit supporting and detailing time spent upon this appeal. (citations omitted.)

Thus, it will be seen that the opinion has been modified to require the district court to grant the appellant back pay, attorneys' fees, and costs in the district court action. I am particularly disturbed by this very material change, and it is my firm belief that any relief granted appellant by the district court should be prospective only. It occurs to me that the district court will be required to engage in speculation if it is compelled to grant appellant back pay. This is so because there is nothing in the record to show that if appellant had been offered a job as maintenanceman that she would have accepted what was offered her. Neither is there any evidence in the record to show the period of time appellant might have continued working for the Commission in any position that she might have accepted. Under these circumstances, I fail to understand what criteria or guidelines the district court may use in attempting to arrive at an appropriate amount to which appellant is entitled as back pay. Before any such award is made, I would hope that the district judge would fully explore the

---

1. Mr. Schumacher, plaintiff's immediate supervisor, did not testify during the trial. The record discloses that the attorney representing the Highway Commission made a conscientious effort to locate Mr. Schumacher, but was unable to do so. Apparently, Mr. Schumacher had suffered from some illness after the toll collecting process on *Paseo Bridge* had been terminated. However, Taggart testified to conversations he had with Schumacher and stated positively that Schumacher at no time demonstrated any bias or prejudice toward plaintiff because she was a female.

questions that I pose in this addendum to my dissent. Appellant is certainly not entitled to back pay which would in effect constitute a windfall for her. Of course, I continue to adhere to my position that she is not entitled to any relief.