Louis JOHNSON, Plaintiff,

v.

WOLFF'S CLOTHIERS, INC., Defendant.

No. 79–766C(5).

United States District Court,
E. D. Missouri, E. D.

Dec. 17, 1980.

Doris Black, St. Louis, Mo., for plaintiff.

Amy R. Reichman, Ben Ely, Jr., Kortenhof & Ely, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

CAHILL, District Judge.

This matter is before the Court for a decision on the merits after a bench trial lasting three days.

Plaintiff, in his complaint, has alleged violations of Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 *et seq.*

After consideration of all the testimony adduced, the exhibits (after trial briefs were not filed), and the applicable law, the Court now makes and enters its findings of fact and conclusions of law.

### Findings of Fact

Plaintiff is a black male citizen of the United States who had previously been employed by the defendant as a salesman and applied for the position of assistant manager in March, 1978. Defendant did not employ him after an interview but instead offered the position to another applicant who subsequently declined to accept it, whereupon defendant determined the position to be unnecessary and did not fill the position thereafter.

Defendant is a Missouri corporation engaged in the business of selling men's clothing and operates several retail stores in the greater St. Louis area, including a store in downtown St. Louis as well as another in West St. Louis County.

Plaintiff alleges that he was denied hire as assistant manager by the ruse of offering him a salary so low as to preclude acceptance of the job by any qualified candidate and that this offer was made in order to exclude his candidacy because he

was black, and that therefore defendant has practiced racial discrimination.

Plaintiff had been employed as a salesman in defendant's downtown store and also in defendant's Northwest Plaza store for about five to six years (1971 to 1976). He was earning approximately $800 per month minimum draw guaranteed against a 7 percent commission for items sold. He left the defendant to operate his own retail men's clothing shop. Plaintiff's store was forced to close in two years because of financial reversals. The defendant had secured a Small Business Administration loan and worked as manager, buyer, and salesman in his own store. He supervised four people.

After the closing of his own shop, plaintiff applied for the position of assistant manager of defendant's West County store. The defendant had advertised the position in the St. Louis Post-Dispatch on July 9, 1978. Several days after, on July 12, 1978, plaintiff applied for the job in person at the defendant's West County Mall store. Plaintiff was interviewed within several days by Mel Bozdeck, the store's manager. Mr. Bozdeck indicated to plaintiff that the salary for the position was $106.00 per week as a draw against an 8½ percent commission on men's furnishings, as well as an annual bonus if sales in the store warranted it.

When told of the salary, defendant expressed surprise and even disbelief because it was less than the salary he had earned as a salesman in the downtown store several years previously. He asked the manager to check the amount for accuracy's sake. The manager then indicated to plaintiff that it was indeed correct and that he himself earned that same salary as manager. The manager indicated that he had to interview other candidates before making a decision. The manager then discussed the plaintiff and other applicants with the president of the defendant corporation and decided to offer the position to a white candidate who, after first accepting, later declined the post without ever coming on duty. The president and manager then decided that the position was not necessary and did not fill it thereafter.

When plaintiff did not hear from the defendant he called the manager several weeks later and was informed that the defendant company had decided not to fill the position. Plaintiff promptly filed a complaint of discrimination with the Equal Employment Opportunity Commission on July 26, 1978.

There were many variables to be considered in comparing the salaries of assistant manager and salesman. While the weekly draw of the plaintiff as salesman was greater, it was based on five or six years of on-the-job experience while the starting salary of the assistant manager was just that. In addition, the manager's 8½ percent commission was greater than that paid salesmen and was augmented by the possibility of an annual bonus. Thus, the comparison was not as striking as plaintiff claimed; that analysis coupled to the uncontradicted testimony of the manager that the amount of his salary was identical to that offered plaintiff lends strong credence to the defendant's denial of plaintiff's claim that the low salary was merely a device to discourage plaintiff from accepting the position.

The argument that the defendant had never employed black managerial personnel in 1978 has considerable merit, but there was insufficient evidence to show that this had occurred because of the discriminatory acts of the defendant. The period of occurrence is also a salient factor; the standards of today are hardly the same as 1972. The burden of proving a prima facie example of racial discrimination rests with the plaintiff; the mere fact that there were no black supervisors, standing alone, would not be sufficient to prove racially motivated acts of discrimination.

## Conclusions of Law

While defendant denies that it acted in a racially discriminatory way and that the plaintiff, in fact, withdrew his application when he learned of the salary level, the Court finds that the plaintiff did meet the basic qualification requirements for the job

of assistant manager of the defendant's West County store and that he did not withdraw his application but left it on file for defendant's consideration.

However, those are not all of the considerations to be weighed by the Court before finding the defendant had committed racially discriminatory acts in its failure to employ plaintiff as assistant manager.

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Court held that a complainant in a racial discrimination suit must establish a prima facie case by proving:

1) that plaintiff belongs to a racial minority,
2) that plaintiff applied for and was qualified for a job for which the employer was seeking applicants,
3) that he was rejected, even though qualified,
4) the position was offered to a lesser qualified white employee, and finally,
5) the reason plaintiff was not offered the job was because of racial discrimination.

While four of these factors have been established, the plaintiff has not shown by prima facie evidence that he was not hired because he was black.

■ It is not the Court's function to determine if good managerial techniques were followed or that defendant failed to establish a personnel guideline that efficiently located and employed qualified staff. The defendant might well have blundered here. The decision not to employ plaintiff was a valid, nondiscriminatory one—that he would not be a satisfied, and therefore satisfactory, employee because the plaintiff believed the salary was too low. His discontent, especially sensitive in a supervisory employee, made him a less desirable employee than others whose experience and skill might be less. There is no proof that there was a discriminatory motive on the part of defendant in offering the position to a white applicant at the same salary level offered to plaintiff. The

testimony of the defendant's manager that he was then receiving the same salary himself is persuasive to the Court; if not true, it could easily have been refuted by plaintiff's counsel. *Meyer v. Missouri State Highway Commission*, 567 F.2d 804 (8th Cir. 1977); *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

■ The plaintiff offered no real statistical evidence supporting his claim of racial discrimination other than the allegation (not denied by defendant) that there was not then, nor had there ever been, a black manager in the Wolff's stores. This is an individual action by plaintiff and not a class action. However, statistical evidence *may* establish a prima facie case nonetheless. *Davis v. Califano*, 613 F.2d 957, 960 (D.C. Cir.1979). But the statistics must be more significant than "bare-bones," "never," or "none." They must show, for example, *some* demographic base, such as the number of relevant positions available in the appropriate labor market, the size and racial make-up of the normal patron population, the geographic location of the stores, and their community characteristics as to race, age, or sex, etc. The Court cannot simply rely on generic cliches that say that the fact that "none were ever hired" is proof positive of racial discrimination, especially when the defendant refutes the argument by showing a non-discriminatory reason why plaintiff was not employed.

■ In the absence of significant statistics which can serve as probative evidence of a discriminatory animus, and especially when the defendant offers convincing contradictory evidence as to the individual position, the Court cannot find, as a matter of law, that the failure to employ was racially motivated in the instant case. Patterns of discrimination must generally be proven, not inferred. Statistical percentages have less significance when they are applied to smaller employers whose work forces do not equal the mathematical percentages required of more substantial employers, for the "smaller the sample size, the greater the likelihood that the underrepresentation

494

reflects chance rather than discriminatory practices." *Williams v. Tallahassee Motors, Inc.,* 607 F.2d 689 (5th Cir. 1979).

It is not enough merely to show that the defendant had never employed a black assistant manager in its store. The plaintiff must show not only that he was qualified by training and experience to do the job, but that there were no disqualifying characteristics that would prevent him from performing adequately. A mistake in judgment, if nondiscriminatory in nature, cannot be the basis of court intervention even though it be ill conceived or without merit. Since defendant's actions, however unprofessional, were not based upon discriminatory criteria, illegal under Title VII a fortiori, plaintiff has not shown an intentional, deliberate, or malicious violation of 42 U.S.C. § 1981 *et seq. New York Transit Authority v. Beazer,* 440 U.S. 568, 569, 99 S.Ct. 1355, 1357, 59 L.Ed.2d 587 (1979).

Accordingly, judgment will be entered for defendant.