555 F.Supp. 658 (1982)
Mary Susan GOODWIN, Plaintiff,
v.
The CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI, and William M. Corrigan, Defendants,
v.
ST. LOUIS COUNTY, MO., Third-Party Defendant.
No. 80-1340C(5).
United States District Court, E.D. Missouri, E.D.
December 30, 1982.
*659 Burton Newman, St. Louis, Mo., for plaintiff.
Karen C. Moculeski, Asst. County Counselor, St. Louis, Mo., for third-party defendant.
Godfrey P. Padberg, St. Louis, Mo., for Corrigan.
Harry O. Moline, Jr. and Shulamith Simon, St. Louis, Mo., for Circuit Court.

MEMORANDUM OPINION
CAHILL, District Judge.
This matter is before the Court for final disposition on the merits of Count I of Mary Susan Goodwin's complaint and for ruling on the merits of the third-party complaint filed by the defendant Circuit Court of St. Louis County (Circuit Court) against St. Louis County, Missouri (the County).
Goodwin initiated this action by filing a two-count complaint alleging that she was "demoted" from her position as a hearing officer for the Juvenile Division of the Circuit Court because she is a woman. Count I alleges that the Circuit Court violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and Count II alleges that defendant the Honorable William M. Corrigan individually contravened the Civil Rights Act of 1866, particularly 42 U.S.C. § 1983, by displacing Goodwin from her hearing officer position because of her sex.
Count II was tried to a jury that found for Goodwin and awarded her one dollar as nominal damages and $1,000 punitive damages. Goodwin's Title VII claim was tried to the Court simultaneously with the jury tried § 1983 cause of action. The parties also have presented stipulations of fact and legal memoranda on the Title VII claim for the Court's consideration. Goodwin seeks the following relief under Count I: 1) a finding that the Circuit Court engaged in unlawful employment practices, 2) an order requiring the Circuit Court to reinstate Goodwin to her position as hearing officer, and to compensate her for lost employment opportunities and benefits and for the disadvantages and adverse effects of her alleged *660 demotion, 3) an order enjoining the Circuit Court from engaging in the alleged unlawful employment practices, and 4) reasonable attorney's fees and costs of litigation. The Circuit Court asserts in its third-party complaint that the County is liable for all relief that the Court awards Goodwin under Count I of the complaint. Based on the following findings of fact and conclusions of law, the Court finds for Goodwin on Count I of the complaint and for the Circuit Court on the third-party complaint.

FINDINGS OF FACT

A. Goodwin's Complaint.
1. Mary Susan Goodwin is a female citizen of the United States and a resident of the State of Missouri. At all relevant times herein she was employed by the Circuit Court and paid by St. Louis County, Missouri. Since the adoption of the nonpartisan court selection system for the Circuit Court in August, 1970, the judges of the Circuit Court may retain such office only on approval of a majority of those voting on the proposition at periodic elections. However, the judges initially are appointed by the Governor of Missouri.
2. The Circuit Court is vested with part of the judicial power of the state by Article II, Section 1, and Article V, Sections 1 and 14, of the Missouri Constitution. The Juvenile Court is a division of the Circuit Court and is responsible for the care, protection, and discipline of children who come within its jurisdiction.
3. The Juvenile Code, Mo.Rev.Stat. Chapter 211, confers broad powers on the Juvenile Court to carry out the statutory purposes of facilitating the care, protection and discipline of children who come within the Court's jurisdiction. Both Chapter 211 and the Rules of Practice and Procedure in Juvenile Court, adopted December, 1975, call for hearings to be held during the various stages of the continuing supervision of the children within the jurisdiction of the Court.
4. Goodwin was hired to work in the Juvenile Court on November 1, 1971. She was selected and sworn in as a Hearing Officer by the then Juvenile Court Judge, Robert Hoester. Judge Hoester was appointed to that position by Missouri Governor Blair in 1958. At all times material herein, the primary function of a hearing officer was to hear cases and make proposed findings and recommendations regarding their disposition to the Juvenile Judge. Goodwin was a hearing officer from November 1, 1971 to March 15, 1979, and during that period she worked for Judges Hoester, Lasky, Edwards, and Corrigan.
5. At all times relevant in this case, the position of hearing officer was not subject to the civil service laws of St. Louis County or the State of Missouri.
6. The position of hearing officer is neither authorized by Missouri statutory law or case law. That position was instituted by the Circuit Court's judges under their inherent administrative powers to efficiently and effectively run the juvenile court system. An executive committee of Circuit Judges (the Committee) oversees the operations of the juvenile court. Traditionally, the presiding juvenile court judge is chairperson of the Committee.
7. At the time Judge Corrigan became the Juvenile Court Judge, January 1, 1979, there were five persons, including himself, who were hearing and adjudicating cases. These included Commissioner Walton LeMay and hearing officers Sam Oliver, Craig Donis, and Goodwin. On March 1, 1979, Robert Branom was appointed by the Circuit Court en banc to become a second commissioner. Juvenile Court Commissioners are authorized by state law.
8. Judge Corrigan declined the position of chairperson of the Committee. However, keeping with tradition, the judges left administration of the juvenile court system to the discretion of the presiding juvenile court judge, Judge Corrigan. Then presiding circuit judge, the Honorable James Ruddy, testified at trial that the circuit judges adhered to a "hands off" policy regarding administration of the juvenile court and left the operation of the juvenile court *661 system to the presiding juvenile judge. But the presiding juvenile court judge usually reported monthly to the Circuit Court en banc and periodically, although less frequently than monthly, to the Committee. Those reports consisted of evaluations of past operations of the juvenile court and proposed actions to improve the juvenile system.
9. After Judge Corrigan became presiding judge of the juvenile court, he undertook to reorganize the juvenile court system by, inter alia, eliminating the three positions of hearing officer. Juvenile court officials testified that Judge Corrigan stated that "things aren't going to run smoothly around here until we get rid of these goddamn women." Judge Corrigan initially proposed to phase out the position of hearing officers by first eliminating two of the existing positions and eventually the third one. Although the record is not abundantly clear, several Circuit Court judges testified at trial that Judge Corrigan likely discussed the details of his plan to reorganize the juvenile court system, including Judge Corrigan's choice of person to retain in the remaining hearing officer position, with the Circuit Court en banc.
10. On March 15, 1979, Judge Corrigan transferred Goodwin from the position of hearing officer to a position of staff attorney in the legal department of the juvenile court. Judge Corrigan retained Craig Donis as the sole remaining hearing officer. Donis' employment at the juvenile court terminated in December, 1980. After Donis' termination, the two Commissioners and Judge Corrigan handled the entire caseload and Judge Corrigan handled the entire caseload of the Juvenile Court.
11. Goodwin's salary was not affected by her transfer to the position of staff attorney. The transfer also did not affect other economic benefits of her employment. She receives the same coverage under health insurance and pension plans and she has the same vacation benefits and sick leave. Her work schedule also was unaffected. She has suffered no economic loss as a result of her transfer. However, arguably, the position of hearing officer is more prestigious than that of staff attorney.
12. Goodwin filed a charge of sex discrimination with the Equal Employment Opportunity Commission on July 25, 1979. She filed this suit on October 16, 1981, within ninety (90) days of receipt of a "Notice of Right to Sue" issued by the Commission on August 19, 1980.
13. The Circuit Court met en banc to discuss Goodwin's lawsuit and the course of action to pursue. The Honorable Robert Hoester, who appointed Goodwin to the position of hearing officer, testified that at that meeting Judge Corrigan stated that the Circuit Court would not have had that problem (the lawsuit) if Judge Hoester had not taken Goodwin "out of the kitchen and put her into a robe." All Circuit Court judges that worked directly with Goodwin and observed her performance testified that she was a diligent and competent worker.
14. Several Circuit Court judges at trial testified that no judge inquired specifically about the reasons for Goodwin's transfer or objected to such action. Moreover, no action was taken to investigate the matter after Goodwin formally charged Judge Corrigan and the Circuit Court with discriminatory employment practices.

B. Third-Party Complaint.
15. Third-Party defendant, St. Louis County, Missouri, is a body corporate and politic, a county of the first class of the State of Missouri, operating under a home rule Charter form of government, adopted on November 6, 1979, pursuant to the provisions of Article VI, Section 18, of the 1945 Constitution of Missouri, and having all the powers and duties prescribed by the Constitution and laws of the State of Missouri and the charter and ordinances of St. Louis County, Missouri.
16. St. Louis County is responsible for the payment of all lawful expenditures of the Circuit Court, including payment of all salaries, compensation and benefits of employment for all personnel (excluding the Judge and Commissioners) of the Juvenile Division of the Circuit Court.
*662 17. Sections 50.640, 50.641 and 476.270, Mo.Rev.Stat., are the pertinent statutory references regarding the budget estimates and expenditures of the Circuit Court and their payment by St. Louis County.
18. The budget estimates of the Circuit Court include the Circuit Court Divisions One through Twenty, Probate Court, Juvenile Court (Children's Building, Juvenile Court Administration, Lakeside Center), Court en Banc, and Associate Circuit Court Divisions Thirty-One through Forty-Three.
19. The procedure followed by the Circuit Court and St. Louis County is that the budget estimate of the Circuit Court is submitted to the County Budget Officer. No later than 60 days prior to the beginning of each fiscal year (currently January 1) the County Executive submits to the County Council a budget for the overall operation of the County. Such budget includes an allocation for the Circuit Court. The budget is adopted by ordinance of the County Council.
20. During the course of a fiscal year, the County Executive may by executive order transfer appropriations within any department. During the course of a fiscal year, supplemental or emergency appropriations are made by the County Council by ordinance, if recommended by the County Executive. These procedures apply to the appropriations for the Circuit Court.
21. Unexpended appropriations are returned to the General Fund at the close of each fiscal year. For each of the fiscal years 1976 through 1981, there were unexpended appropriations of the adjusted appropriation sums provided for the Circuit Court. The unexpended appropriations returned to the General Fund from the Circuit Court for such fiscal years ranged from $462,000 in 1978 to $91,188 in 1980.

CONCLUSIONS OF LAW
1. The Court has jurisdiction over this controversy pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1343.
2. The Circuit Court is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).
3. Goodwin was at the relevant times herein an "employee" within the meaning of 42 U.S.C. § 2000e(f).
4. Goodwin must first establish a prima facie case to succeed on the merits of this Title VII cause of action. Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Goodwin presented a prima facie case by showing that 1) she is a member of a protected class (female), 2) she was qualified for the job of hearing officer, 3) despite her qualifications she was transferred from the position of hearing officer, and 4) after Goodwin's transfer, the Circuit Court, through Judge Corrigan, awarded the sole remaining job of hearing officer to a male who has similar or less qualifications. Meyer v. Missouri State Highway Commission, 567 F.2d 804 (8th Cir.1977). However, some of the Circuit Court judges testified at trial that Craig Donis was an excellent candidate for the hearing officer position.
5. After Goodwin's prima facie case is established, the burden shifts to the Circuit Court to show a nondiscriminatory purpose for the selection of Donis over Goodwin or that Goodwin was not treated differently from the other persons available for the hearing officer position. Meyer, supra, at 807-08. There were three hearing officer positions. Two of them were initially eliminated. The record indicates that Sam Oliver, a former hearing officer, voluntarily relinquished his position. Thus, there were only two persons actually in the running for the remaining positionGoodwin and Donis. The Court finds that the Circuit Court, through Judge Corrigan, treated Goodwin's "application" for the position of hearing officer differently than Donis' because she is a woman, and has failed to rebut the inference that it discriminated against Goodwin on the basis of sex.
6. Having found that the Circuit Court is an employer within the meaning of *663 42 U.S.C. § 2000e(b), and that the Circuit Court was exercising its inherent administrative power when it transferred Goodwin, the Court concludes that the Circuit Court is not shrouded with judicial immunity in this instance. 42 U.S.C. § 2000e-2(a).
7. The Court finds, however, that Goodwin suffered no economic loss and is not entitled to a monetary award. Goodwin's transfer did not affect her salary or her other economic benefits of employment. She also received the same coverage under her employee health insurance and pension plans. Goodwin also has the same vacation benefits and sick leave as when she was a hearing officer. Goodwin is not entitled to reinstatement because the Court finds that the position of hearing officer has been abolished and the circumstances of this case do not warrant the affirmative relief of ordering that position reopened. Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).
8. The only award to which Goodwin is entitled is declaratory relief. The Court specifically finds that the Circuit Court, through Judge Corrigan, violated Title VII of the Civil Rights Act of 1964 by transferring her from the position of hearing officer to the position of staff attorney because of her sex. Injunctive relief is inappropriate because the Court is not disposed to order the Circuit Court to reinstate Goodwin to the hearing officer position. Since there is no evidence in the record of the Circuit Court's continued discriminatory practice against Goodwin, injunctive relief will be denied.
9. However, the Court does tax Goodwin's attorney's fees and costs of litigation against Judge Corrigan and the Circuit Court. 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988.
10. On the third-party complaint, the Court finds that the County is inextricably involved in this litigation inasmuch as it is the funding source of the Circuit Court, Marafino v. St. Louis County Circuit Court, No. 78-1255C(3) (E.D.Mo. May 14, 1980), and that without entering judgment against it on the third-party complaint, the Court's broad powers to fashion a remedy to further the objectives of Title VII, 42 U.S.C. § 2000e-5(g), would be a nullity. Moreover, the County admits that it is responsible for the payment of all lawful expenditures of the Circuit Court. One would be hard pressed to deny that a court ruling that assesses a monetary award against the Circuit Court is not a lawful expenditure. Therefore, judgment is entered for the Circuit Court on the third-party complaint that seeks indemnity from the County for any relief awarded to Goodwin against the Circuit Court in this lawsuit.

JUDGMENT AND ORDER
In accordance with the memorandum opinion filed this day and incorporated herein.
IT IS HEREBY ADJUDGED, DECLARED, and DECREED that Mary Susan Goodwin shall have judgment against the defendant Circuit Court of St. Louis County, Missouri, on Count I of her complaint.
IT IS FURTHER ORDERED, ADJUDGED, and DECREED that third-party plaintiff Circuit Court of St. Louis County, Missouri, shall have judgment against third-party defendant St. Louis County, Missouri, on the third-party complaint.
IT IS HEREBY ORDERED that defendants Circuit Court of St. Louis County, Missouri, and the Honorable William M. Corrigan shall pay Mary Susan Goodwin's reasonable attorney's fees and costs of this litigation.